Good morning, Your Honors. May it please the Court, my name is Dowl Patton. I would like to reserve three minutes for rebuttal. I represent Erica Soltero, the appellant in this matter. Your Honors, this appeal presents a very discreet issue, and I'd like to focus the Court's attention on the very recent case of Ashby v. Archstone Property Management, the opinion of which was delivered May 12th, just three days ago. Because it bears on the issues that are presented here, which is not really the details of the arbitration agreement at issue, but rather the method of proof and the quantum of proof that is required to demonstrate the knowing assent to the terms of an arbitration agreement. Your Honors, the district court's ruling below here essentially said that if there is evidence of a custom and practice that the employer has with all of its employees, then that proof of a custom and practice is sufficient to absolve the employer of providing a document with a signature on it that says, yes, I... But this was an electronic signature, right? Your Honor, electronic signature, yes, and electronic signatures are very important. That was what happened here. She didn't sign it, as I understand from reading the records here. She didn't sign it with a pen. Not a paper copy, Your Honor. She signed it electronically on the screen. She was required to punch in her social security number and some other identifying information. Yes, Your Honor, and that's the precise issue that we have here, which is when you have a document that's signed with pen and ink, that's very easy to demonstrate what the contents of that document are. But the Ashby court says the words matter, and only a couple of words can be the difference between whether there's an assent manifested or not. Ashby... Well, the declaration from the person that was in charge of the online documentation pretty much outlined the process. She outlined the process but not the content, Your Honor. If you look at the evidence, and we've identified it in the briefing, the evidence is essentially when it came to screen 7, Ms. Soltero entered her social security number and her name, thereby demonstrating that she saw it and assented to its terms. What we don't have is any admissible evidence as to what screen number 7 or whatever it was was. Indeed, what we offered to the district court below is there's different versions of this document. Which one is it? And the... Aren't there multiple documents that refer to arbitration? And the declaration attaches at least one that includes that reference to arbitration. Yes, Your Honor. The documents do refer to arbitration, but what's absent from the proof below is that arbitration was presented on a screen to Ms. Soltero and she knowingly assented to those terms. It's absent. Well, what requires knowing as in I understand? Nobody else can say that, so I don't know that that's required. We get lots of arbitration agreements that are signed and nobody attests to the fact that the signer knew what she was signing. That doesn't matter. Absolutely, Your Honor. But as this Court has just ruled in Ashby, the knowing assent has to be demonstrated. It has to be proven. This is a threshold issue. The Ashby Court, Your Honor, said the employee has to be diligent. You can't just disclaim knowledge once you've signed and said, hey, there's an arbitration provision in here. I agree to go read it. The Ashby Court said if that's in there, if those words are in there and you sign that, you have to be a diligent employee. This case, Your Honors, presents the opportunity for this Court to tell the employers that they must exercise diligence in the maintenance of their records so that they can prove by admissible evidence what the content of the information that was presented to the employee was. That's the only issue presented on this appeal, Your Honors. Do you contend that the — I forget the name of the person that was — the declaration. Her name is a little bit — Verhoeven. Pardon? I believe it's Verhoeven. Verhoeven. Is it your argument that that declaration was not admissible? Not the declaration in toto, Your Honor, but we made objections in the district court below saying there's not personal knowledge of the exact file. And, Your Honors, if you will look at the excerpts of record 31, 32, 36, and 39, you will note on there indicia of — these are just examples of what might have been presented because they say slash dev. When you see slash dev in computer terminology, that's a file that's under development. If you look at the date, the date says October 23, 2009, three years after. So it's very simple for the employer to comply with its obligations. Its obligations are simply to maintain a record that says this is what was presented because the Ashby court says those words matter. Three or four words can mean the difference between whether this is something that is not enforceable under the Nelson case or whether this is something that is absolutely enforceable under Ashby because the employee did not exercise diligence. Here, the court must — the court must draw a bright line and say if you want to avail yourselves of this, of the protections of the Federal Arbitration Act, you must simply keep an admissible record of what was presented to the employee and nothing more. That's all, Your Honor. I'll reserve the rest of my time. Thank you. Good morning. May it please the Court, my name is Brian Parsons. I'm in-house counsel. Keep your voice up. My name is Brian Parsons. I'm here appearing on behalf of Macy's. This appeal has two primary issues. The first is whether or not the district court appropriately compelled Ms. Soltero's claims to arbitration. And the second issue is whether or not the district court abused its discretion in admitting the solutions in store acknowledgement form that's linked to her electronic signature. Before we get to those questions, I want to quickly go through a little bit of background information because it informs the answer to both of those questions. Macy's, like many employers, has an arbitration program, and Macy's calls its program Solutions in Store. And, importantly, this is not a mandatory arbitration agreement. This is an arbitration program that's offered to all employees, and those employees have the opportunity to opt out within 30 days at the beginning of their employment. To make sure that employees understand that choice, Macy's undergoes a number of education efforts, and did so, in fact, in this case with Ms. Soltero. First, Ms. Soltero was provided information about the Solutions in Store program through her employment application. When she completed that employment application, it includes language about the need to opt out if you don't want to be a part of the arbitration program. Ms. Soltero does not contest that she completed this employment application. There's also the new hire brochure that all new employees are given, and this brochure walks through the arbitration portion of Solutions in Store and, again, the need to opt out if you don't want to be included in arbitration. Third is the actual plan document. These are the nuts and bolts of the arbitration program, including how to select an arbitrator, things of that nature. There's also a Solutions in Store video that all new employees see. And, again, this video goes through some of the steps, talks about the fact that employees need to opt out if they don't want to be included in Step 4 arbitration. And finally, and perhaps most importantly, there's the opt-out election form itself. And this is the form that's given to new employees, and it directs them what they need to do if they want to opt out of arbitration. And, specifically, they need to fill it out and mail it back to Ohio. Ms. Soltero isn't arguing that she didn't receive any of those documents. She's not claiming that she didn't receive those. And, in fact, the district court made note of that at the hearing in the motion to compel arbitration, and Judge Mendez noted that there's no argument in her declaration or in the opposition to the motion to compel that she didn't receive any of those documents. Is there any dispute about what documents she received, the contents of those documents? Not in any of the arguments that I've seen, Your Honor. Are the documents that she received, were they marked as exhibits? They were, and they were marked in Ms. Gick's declaration, I believe. Not the declaration of Virganton? No, that's a separate declaration. That's the declaration that deals with the electronic signature. So that's kind of the last piece, where new employees go through, as part of New Ohio Orientation, they have to go through and fill out W-4, associate discount, a number of different documents on a computer screen, where they go through and they see the information, they fill it out, and then they have to input their electronic signature, which, as you noted, is the Social Security number and some other identifying information. And that's the last piece. And that's the only piece of evidence that, of the education efforts that Macy's provided, that Ms. Salterio is challenging. And it's important to note that this signature is not the agreement to arbitrate itself. The acknowledgement form that she saw is merely an acknowledgement that she's received the brochure. And that's the same brochure that she's not, she hasn't said she didn't receive in the first place, but she's just saying we can't authenticate her electronic signature that says, I received this brochure and I understand I have 30 days to opt out. With this background in mind, we need to address the first question. Does Macy's keep an electronic personnel file for each employee? Yes. So everything, you would think that everything that she's signed or was given would be in that electronic personnel file? Everything that she had signed, potentially, there's two different places where you would find electronic personnel files. I understand there's a human resources personnel file, and then there's these electronic signatures for those kind of type of documents, and those may or may not be the same. Did they ever get put together? Not that I'm aware of, no. I mean, not in the same electronic space. So, but when you take all those facts into consideration, there's no dispute from her that she received any of these materials, including the opt-out election form. There's no dispute, therefore, that she's been put on notice of the arbitration program and her need to opt out if she didn't want to be bound by arbitration. And there's no dispute that she didn't return the election form that she needed to do if she didn't want to be included in arbitration. So under established California law and the law of the circuit, under a couple of circuit city cases, like Nod and Ahmed, her failure to opt out is evidence of mutual assent and results in an enforceable agreement to arbitrate. Whether or not the district court admitted the acknowledgement form that's linked to her electronic signature simply doesn't impact the analysis of whether or not she's subject to binding arbitration under the applicable law. And that's true if you apply a harmless error standard or that the acknowledgement form is simply cumulative evidence. And there's certainly no prejudice to Ms. Soltero. But they just have to demonstrate that she had knowledge of the need to opt. Sorry? They have to demonstrate that you have to demonstrate that she had knowledge of the obligation to opt out. Right. And that's what they're saying, as I understand it. Right. And we did through all of the evidence that I just described. And again, Ms. Soltero submitted a declaration not saying, oh, I didn't receive any of these documents. These are all lies. It says, I went through training. I went through training in July 14, 2006. And during that training, I electronically signed a number of forms. And the only thing that she's contesting is whether or not her electronic signature is appropriately linked to that one acknowledgement form. So let's address that second question, whether or not the district court was manifestly erroneous in admitting that acknowledgement form. Do I understand you correctly? It's her burden to show that she opted out, according to you? Well, we would have evidence of that if she opted out. She's not contesting. In her declaration, it specifically says, I would have submitted the election form if I understood it. But she admits she didn't submit the election form. She admits she did not. That's correct. Okay. So Ms. Soltero claims that the acknowledgement form is not appropriately linked to her electronic signature. And if you go through the declaration, it's very clear that it does. It goes through point by point and establishes that Exhibit F is both – think about it as like a two-page document. The first page is the solutions in store acknowledgement, and the second page is her electronic signature. And, in fact, the electronic signature page specifically says this is linked to the document called solutions in store, which is what Macy's early dispute resolution program is called. And it goes through specifically and talks about how those two are linked and that Exhibit F, I believe, is the electronic signature that she provided. And although Ms. Soltero talks about the requirement there be some sort of hypnographic hash function, there's nothing in the Federal Rules of Evidence that require anything like that. And, in fact, the declaration does go through and discuss how the signature is linked in an XML format so he can identify which electronic signature that it is. Soltero also claims that there are indicia of unreliability. But that misses the mark because Exhibit C, which is specifically identified as an exemplar, that's exactly what it is. It's a screenshot that you would see like on your computer screen. So you would see where there's a little pop-up screen and here's the language behind it. That's not, and as noted, that wasn't printed off or that screen print wasn't captured until three years after the fact. The acknowledgement form that she saw, the language that she would have seen, is contained within the exhibit that's linked with her actual electronic signature. And so under these circumstances... So Council was complaining, or not complaining, I guess, but noting that on Exhibit C it says at the top, development. So this was an exemplar. Exhibit C, yes. So that's a different way of showing how this information is presented. It's a screenshot on a computer screen as opposed to just the text. And so under these circumstances, there simply isn't any manifest error by the district court in admitting the acknowledgement form. And the last point, really briefly, there's also been a request to engage in some sort of additional discovery. As has been noted, an additional discovery isn't going to change what's happened here and all the evidence that's already been admitted. Additionally, they've already had the opportunity to engage in discovery. Macy's filed its motion to give full arbitration, including the declaration back on July 2nd. The hearing wasn't until September 18th, and yet no deposition notices were issued, no written discovery was issued trying to find out this additional information about authenticating these exhibits or anything to do with that. And finally, Rule 56 specifically talks about if an attorney or a party wants or believes they need additional information to respond to a motion for summary judgment, they need to file an affidavit or declaration. And I believe it's the Ashton Tate case talks about that needs to be done before the motion for summary judgment hearing. And again, that wasn't done here. Okay. Thank you. Thank you very much. Your Honors, it's important to go back and look at the Nelson decision and the Cummins decision in which we're talking about the acknowledgement forms and what is required. It's not just to place the employee upon notice, but it's to obtain the employee's assent to the terms of it. The Ashby court specifically rejected the notion that simple continued employment manifests that type of consent and really did focus on what are the employee's obligations. The employee can't hide their head in the sand. But on the other hand, the employer, what does the employer have to do in order to avail itself of an arbitration provision under the Federal Arbitration Act? It simply has to say, be able to prove with admissible evidence in court. Not, here's an exemplar, a development exemplar from 2009, three years later, about what was presented to the person and what that person was apprised of and assented to. It's very simple. We've offered the... In the briefing, we referred to a simple cryptographic hash function. This is the type of stuff that comes with all of the online forms that we click through and assent to the terms of licenses for software. That, you can go back and look at that. What is that exactly? But you didn't ask them to go back and look at that, did you? Didn't make a discovery request that would have sought that information. Your Honor, it's not my obligation in responding to a motion to compel them. Well, right now, you look at the pile of evidence, and what's the pile of evidence on your client's side denying the fact that she signed electronically such an agreement? I don't see any evidence at all. I see, I'm not sure. So it doesn't take a whole lot to beat that. Your Honor, my client does not have control over the information systems that... And your client had the right to inquire, had the right to request discovery, had the right to find out, and elected not to exercise those rights. So the evidence the district court had in front of it at the time it made its decision was this stack of evidence on the side of Macy's and this stack of evidence on the side of your client. And the issue for us is whether that's sufficient to sustain summary judgment. Well, your client doesn't have much to offer. Your Honor, the evidence proffered by Macy's, nowhere in that evidence does anybody swear under penalty of perjury that this is the exact language that was presented to Ms. Soltero in 2006 and that she entered her Social Security number and she entered her name in that other computer screen. All we have... But, you know, you can draw reasonable inferences from the admissible evidence. Yes, Your Honor, but... As Judge Clipton just said, there's nothing really here to call that into question. The district court... There is no evidence that says that... You could have taken the deposition of any one of these people and, you know, let's go through this. Allowing proof of the knowing assent of an employee based on a pattern in practice is contrary to law, Your Honor. Okay, I got your point. Thank you. Thank you. Matter submitted.
judges: Paez, Clifton, Duffy